E-FILED
Thursday, 08 September, 2005  01:45:00 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

_____

| | | |
|---|---|---|
| CATERPILLAR INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 99-CV-1201 |
| | ) | |
| STURMAN INDUSTRIES, INC., ODED E. | ) | |
| STURMAN and CAROL K. STURMAN, | ) | Judge Michael M. Mihm |
| | ) | |
| Defendants. | ) | |

_____

| | |
|---|---|
| | ) |
| STURMAN INDUSTRIES, INC., and ODED E. | ) |
| STURMAN, | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CATERPILLAR INC., | ) |
| | ) |
| Counter-Defendant. | ) |

_____

### ORDER

This matter is now before the Court on Defendants Sturman Industries, Inc., Oded Sturman, and Carol Sturman's (hereinafter referred to collectively as the "Sturmans") Motion for Summary Judgment on Caterpillar's Trade Secret Claim.  For the reasons set forth below, the Motion for Summary Judgment [#494] is DENIED.

### BACKGROUND

Defendant Oded Sturman ("Mr. Sturman") began his work in residual magnetism in the 1960's.  In 1973, he obtained U.S. Patent No. 3,643,898 (the "'898 patent") on technology related to "[l]atching devices which utilize the residual magnetism retained in

the relatively soft magnetic materials in the magnetic circuit for the latching force."  In the late 1980's, Mr. Sturman developed a fuel injector valve using residual magnetic latching while working for Cummins Engine Co and also worked on developing applications for residual magnetism for other companies.

In 1991, Caterpillar and Mr. Sturman executed a Consultant Agreement to develop electronically controlled actuators and related driver circuits for possible applications in fuel systems for diesel engines.  In 1992, the Consultant Agreement was replaced with a Joint Development Agreement ("JDA") to develop actuators and driver circuits for Caterpillar's exclusive use in fuel systems for diesel engines.  The work done under the JDA primarily related to valves for mechanically actuated, electronically controlled unit injectors ("MEUIs"), and Sturman assigned its rights in these inventions to Caterpillar pursuant to the JDA.

During a meeting at Jumer's in Peoria in September 1992, Mr. Sturman sketched an idea for an integrated spool valve employing residual magnetic latching using 52100 steel on a napkin (hereinafter referred to as the "Jumer's drawing").  Caterpillar rejected the idea for application in MEUIs because it was not suitable for high pressure fuel systems. Sturman agreed with this assessment, and the parties did not further develop the idea of a spool valve for use in MEUIs.  However, Caterpillar recognized the "tremendous potential" of the integrated spool valve design and began to explore the idea of using such a valve in hydraulically actuated, electronically controlled unit injectors ("HEUIs").  Caterpillar never informed Sturman about this work and treated this project as outside of the JDA.

The JDA expired by its own terms in July 1993.  Caterpillar wanted to amend the JDA to avoid paying ongoing royalties by offering Sturman a lump-sum payment of

$275,000 and sought a release of any claims involving the JDA in exchange.  The parties executed the amendment on November 30, 1993.

Mr. Sturman began consulting on numerous other projects focusing on integrated spool valve designs, including designs for Navistar and BKM.  In spring 1994, Mr. Sturman published an article describing this technology in Machine Design and also filed two patent applications relating to this technology, U.S. Patent No. 5,640,987 (the "'987 patent") and U.S. Patent No. 5,460,329 (the "'329 patent").  In May 1994, Caterpillar's counsel drafted a patent application covering the work that Caterpillar had been doing with respect to an integrated spool valve for use in a HEUI.  The application listed Mr. Sturman as a co-inventor, and Caterpillar asked him to sign the application and assign Caterpillar his rights in the invention.  Mr. Sturman refused, claiming that he had invented the technology outside the JDA.  Ultimately, Caterpillar obtained U.S. Patent No. 5,479,901 (the "'901 patent"), which did not name Mr. Sturman as an inventor.

On June 28, 1999, Caterpillar brought this action against the Sturmans, alleging violation of the Illinois trade-secret statute, breach of the JDA, and conversion of Caterpillar's property.  Caterpillar also sought to correct the inventorship of Sturman's '329 and '987 patents.  The Sturmans counterclaimed, seeking correction of the inventorship of Caterpillar's '901 patent and claiming that the amendment to the JDA was fraudulently induced.  Caterpillar was granted summary judgment on the Sturmans' counterclaims.  Caterpillar's claims of trade-secret misappropriation, breach of contract, and conversion were tried, and the jury found in favor of Caterpillar.  A bench trial was held on the correction of inventorship claims, which resulted in findings that Sturman was the true and only inventor on the '329 and '987 patents and that Sturman was also the sole inventor on

the '901 patent.  The district court then awarded Caterpillar ownership of the '329 and '987 patents by directing specific performance under the JDA.   After the denial of post-trial motions, Caterpillar and the Sturmans each appealed certain aspects of the district court proceedings to the Court of Appeals for the Federal Circuit.   On appeal, the Federal Circuit vacated the jury's verdict and resultant remedies, reversed the grant of summary judgment in favor of Caterpillar, affirmed the decision that Mr. Sturman was the sole inventor of the '329 and '987 patents, reversed the decision naming Mr. Sturman as the sole inventor of the '901 patent, and remanded for a new trial.

Following remand from the Federal Circuit, the case is now before this Court for retrial.  Defendants have moved for summary judgment, arguing that that two post-trial occurrences warrant the entry of judgment in their favor on Caterpillar's trade secret claim. Caterpillar has filed its response.  The matter is fully briefed, and this Order follows.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

**DISCUSSION**

The Sturmans seek summary judgment on Caterpillar's trade secret claim based on the argument that Caterpillar has no trade secret because the alleged trade secret was already well-known and in the public domain prior to 1992. This matter has previously been addressed several times in this litigation. At summary judgment, the Sturmans argued that Caterpillar's misappropriation of trade secrets claim must fail because Caterpillar had failed to show: (1) the Sturmans did not know the alleged trade secret information at the time they first met Caterpillar; or (2) that the alleged trade secret information was not already known in the art; or (3) that Caterpillar took the necessary steps, required by the JDA for such information to be afforded protection. On December 10, 2001, the court denied summary judgment, finding a material issue of disputed fact as to whether the subject matter

embodied in the Jumer's drawing was a trade secret owned by Caterpillar.  Specifically, the court noted that the question of whether the technology depicted in the Jumer's drawing arose out of the JDA or was the result of Mr. Sturman's pre-JDA work in achieving residual magnetism depended on a factual determination as to whether or not Mr. Sturman knew how to achieve workable magnetic latching in a fuel injector using residual magnetism rather than permanent magnets.

The argument was revisited in the context of the inventorship issues in the Sturmans' Motion for Clarification or Reconsideration.  In ruling on that motion on January 8, 2002, the court noted that the fact that Mr. Sturman was able to obtain two new patents (i.e., the '329 patent and the '987 patent) implementing the latching actuator using residual magnetism demonstrated that the new patents must have added something new to the art contained within his 1973 patent.  The court found that if the technology had been fully disclosed in the 1973 patent, the claims in the applications for the '329 and '987 patents would have been rejected under 35 U.S.C. § 103 and again noted the factual dispute in the record regarding whether or not Mr. Sturman had achieved workable magnetic latching using residual magnetism prior to his work with Caterpillar under the JDA.

In denying the Sturmans' Motions for Judgment as a Matter of Law on July 12, 2002, the court found that Mr. Sturman admitted that his first work with fuel injectors was with Cummins.  During his work with Cummins in 1987, Mr. Sturman claims that he achieved workable residual magnetic latching in a fuel injector valve.  However, he did not make any effort to file a patent to cover this new technology until after his involvement with Caterpillar under the JDA.  From this, a reasonable jury could conclude that Mr. Sturman had not completed the invention prior to the term of the JDA.  The court then stated:

> Furthermore, the fact that Mr. Sturman's initial proposal called for the use of permanent magnets as well as joining with Caterpillar in researching and experimenting with various materials with the necessary remanence and hardness to achieve workable residual magnetic latching in a fuel injector environment supports Caterpillar's assertion that Mr. Sturman did not know how to use residual magnetic latching in the fuel injector environment prior to his work with Caterpillar.

The court then went on to reject the Sturmans' argument that Caterpillar's trade secret claim was in the public domain. In rejecting this argument, the court found that the alleged trade secret was not disclosed in the '898 patent, which reflected only the broad, overall concept of latching via residual magnetism in a valve, as opposed to the specific applicability of that concept to a fuel injector environment. Citing <u>Syntex Opthalmics, Inc. v. Tsuetaki</u>, 701 F.2d 677, 684 (7th Cir. 1983), the court acknowledged that under Illinois law, "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Finally, the court found that there was evidence in the record suggesting that the combination that allegedly formed the trade secret in this case was not previously in the public domain.

> For example, the fact that the technology had not been used in fuel injectors, although it was allegedly in the public domain for over 20 years, and the fact that the alleged trade secret has significant economic value, would support the conclusion that the trade secret was not public knowledge prior to the work under the JDA.

On February 6, 2003, the court ruled on Caterpillar's claims for correction of inventorship on the '329 and '987 patents. In denying the requested correction of inventorship, the court found that Mr. Sturman conceived of the designs reflected in the

patents and that the work done by Caterpillar employees in identifying suitable magnetic materials in connection with a different valve did not relate or translate into a contribution to the distinguishable designs reflected in the '329 and '987 patents.  The court further found that information regarding the materials required to latch an integrated spool valve via residual magnetism was already in the public domain by virtue of Sturmans' '898 patent in 1973 and was not significant to the novelty of the valve design claimed in the '329 patent. Thus, the court rejected Caterpillar's request to be listed as a co-inventor on the '329 patent.  The court then rejected Caterpillar's request to be listed as a co-inventor on the '987 patent based on the finding that the use of latching materials specifically for use in fuel injectors does not even appear in the '987 claims.

On May 29, 2003, the court denied the Sturmans' Renewed Motion for Judgment as a Matter of Law, noting that the Sturmans' interpretation of the February 6, 2003, Order denying Caterpillar's claims for correction of inventorship as somehow foreclosing the jury verdict on Caterpillar's trade secret misappropriation claim was erroneous.   The court directly addressed and rejected the argument that the court's findings of fact on the correction of inventorship claims showed that Caterpillar did not have a trade secret. Specifically, the court stated that while "the components of Caterpillar's trade secret separately existed in the public domain, that did not foreclose its protection under the ITSA" as "a pattern, technique, or process need not reach the level of invention required to warrant patent protection to be considered a trade secret."  The court again recognized the existence of sufficient evidence in the record to support the conclusion that Mr. Sturman did not know how to achieve workable magnetic latching in a fuel injector in the absence

of permanent magnets via the use of a housing and armature made of materials with sufficient residual magnetism prior to his work under the JDA with Caterpillar.

This is the well-established law of the case.  Precedent teaches that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Jarrard v. CDI Telecommunications, Inc., 408 F.3d 905, 911-12 (7th Cir. 2005), *citing* Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988).  This doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." Id., *citing* Evans v. City of Chicago, 873 F.2d 1007, 1014 (7th Cir. 1989).  While a judge may alter previous rulings under certain circumstances, the presumption is that the prior rulings will stand unless the presumption is overcome for compelling reasons such as new controlling law or clear error.  Mendenhall v. Mueller Streamline Co., ___ F.3d ___, 2005 WL 1994114, at *4 (7th Cir. Aug. 19, 2005), *citing* Best v. Shell Oil Co., 107 F.3d 544, 546 (7th Cir. 1997).

The Sturmans are now before this Court on remand asking the Court to revisit an issue that has previously been decided several times and effectively reconsider the law of the case based on the argument that such rulings were based on faulty premises.  First, the Sturmans suggest that Judge McDade's findings underlying his rulings on the correction of inventorship claims somehow warrant a change in the law of the case.  Interestingly enough, this is precisely the same argument that was presented to and rejected by Judge McDade in denying the Sturmans' Renewed Motion for Judgment as a Matter of Law. Accordingly, the Sturmans' contentions in this respect amount to nothing more than a motion for reconsideration.

While the correction of inventorship rulings necessarily post-dated the denial of the Sturmans' previous motion for summary judgment, the law of the case set forth above rebuts the suggestion that these rulings were not previously considered in the addressing their argument that Caterpillar's trade secret claim must fail as a matter of law.  As their prior arguments failed to elucidate any clear error in the court's decision, and it is not appropriate to rehash previously rejected arguments in a motion to reconsider, this aspect of the Sturmans' current Motion is summarily denied.  "  Caisse Nationale de Credit v. CBI Industries, 90 F.3d 1264, 1270 (7th Cir. 1996).

The Sturmans next refer to a post-trial determination by the U.S. Patent and Trademark Office, which they claim "expressly determined that the residual magnetism aspect of . . . the '901 patent would have been obvious to one of ordinary skill in the art." However, further investigation reveals that this so-called "determination" was made in a preliminary finding in interference proceeding that was subsequently dismissed; there was no final decision on the merits of this issue or any resultant binding ruling by the Patent and Trademark Office.  Nor was there any ruling at all that addressed any corresponding trade mark rights.  Accordingly, this purported "determination" has little, if any, evidentiary value and fails to demonstrate any clear error in the law of the case.

The Sturmans argue that the Federal Circuit "has affirmed that Caterpillar's alleged inventive contribution was no 'missing magnetic link,' and there were no facts presented at the prior six-week trial contradicting the '898 Patent's teachings.  As such, there is no reason no to shy away from summary judgment based on the Court's previous denial." With all due respect, the Court does not "shy away from summary judgment" when it may properly be entered.  However, in this case, it is abundantly clear that the Sturmans are not

entitled to summary judgment on Caterpillar's trade secret claim no matter how strenuously or repeatedly they reassert their arguments or erroneously attempt to equate issues of inventorship under patent law with the much broader law governing trade secrets.

The Sturmans also suggest that it is appropriate for this Court to revisit the facts "before spending another six weeks on a jury trial."  Nevertheless, the possible length or contentiousness of an upcoming trial does not trump the summary judgment standard or make the entry of judgment as a matter of law proper where it otherwise would be improper.  As the Sturmans have failed to demonstrate any clear error or new law governing the law of the case, or otherwise establish that no reasonable jury could find in favor of Caterpillar on its trade secret misappropriation claim or, conversely, that a reasonable jury could only find that Mr. Sturman's '898 patent discloses Caterpillar's trade secret, their Motion for Summary Judgment must be denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [#494] is DENIED.  This matter remains set for final pretrial conference on Wednesday, September 28, 2005, at 9:00 a.m. in person in Peoria.

ENTERED this 8th day of September, 2005

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge