E-FILED
Tuesday, 27 September, 2005  02:57:38 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| CATERPILLAR INC.,<br><br>    Plaintiff,<br>v.<br><br>STURMAN INDUSTRIES, INC., ODED E. STURMAN and CAROL K. STURMAN,<br><br>    Defendants.<br><br>STURMAN INDUSTRIES, INC., and ODED E. STURMAN,<br><br>    Counter-Plaintiffs,<br>v.<br><br>CATERPILLAR INC.,<br><br>    Counter-Defendant. | Case No. 99-CV-1201<br><br>Judge Michael M. Mihm |

## ORDER

This matter is now before the Court on various Motions in Limine by both Caterpillar and the Sturmans. For the reasons set forth below, the Sturmans' Motions in Limine No. 1-6 [#487] are GRANTED IN PART, DENIED IN PART, and MOOT IN PART. The Sturmans' Motion in Limine No. 7 [#506] is DENIED, and their Motion in Limine No. 8 [#514] is DENIED. Caterpillar's Motion in Limine No. 2 is not addressed in this Order and will be addressed separately.

**DISCUSSION**

I.    <u>Sturmans' Motion in Limine No. 1</u>

The Sturmans move for the admission of DX410, a March 14, 1996, internal technical evaluation of the '329 patent's dual solenoid integrated spool valve prepared by Matthew Touvelle, an engineer at Caterpillar. Specifically, the Sturmans cite conclusion no. 4 of the document, which states: "The dual solenoid spool system performance relating to Mr. Sturman's '329 patent does not benefit from the use of latching materials (SAE 52100/SAE 4140)." The Sturmans contend that said statement is an admission by Caterpillar that its proposed contribution to Mr. Sturmans' spool valve design was not the significant "missing link" that made the invention workable.

In ruling that this exhibit was not admissible, Judge McDade relied on the following findings: (1) the date of the document in 1996 was several years after the events in question in this case; (2) there was an inadequate foundation laid for the admission of the document as its author was not called as a witness and the report referred to testing pursuant to the "dynasty model" when there was no evidence in the record as to what that methodology was; (3) the purported probative value of the identified statement was substantially outweighed by the danger of unfair prejudice, as statements appearing later in the same document suggest that the identified statement referred to a comparison between the '329 spool valve and a non-latching valve using springs rather then the efficacy of SAE52100 or SAE 4140 in the '329 patent.

Precedent teaches that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Jarrard v. CDI Telecommunications, Inc.</u>, 408 F.3d

905, 911-12 (7th Cir. 2005), *citing* Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988). This doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." Id., *citing* Evans v. City of Chicago, 873 F.2d 1007, 1014 (7th Cir. 1989). While a judge may alter previous rulings under certain circumstances, the presumption is that the prior rulings will stand unless the presumption is overcome for compelling reasons such as new controlling law or clear error. Mendenhall v. Mueller Streamline Co., ___ F.3d ___, 2005 WL 1994114, at *4 (7th Cir. Aug. 19, 2005), *citing* Best v. Shell Oil Co., 107 F.3d 544, 546 (7th Cir. 1997).

Here, the Sturmans argue that the court's prior ruling was clearly erroneous, "as Judge McDade effectively reversed himself after trial when he relied upon DX 410 for the very same proposition that Sturman sought to present to the jury . . . . The Court could not have relied on DX410 if any of the stated bases for exclusion still stood." However, this argument is unavailing as it erroneously attempts to equate issues of inventorship under patent law with the much broader law governing trade secrets. The Sturmans' argument also fails to note the critical distinction between excluding potentially relevant evidence from consideration by a jury due to the danger of unfair prejudice and the consideration of the same document by a judge, who can ignore irrelevant or prejudicial implications, in a bench trial setting.

The Sturmans next contend that ambiguity concerning the "dynasty model" was not grounds for exclusion because it was Caterpillar's method that it used to perform the analysis in DX410. According to the Sturmans' theory, the court should have allowed the admission of the exhibit and then allowed Caterpillar to put on rebuttal or cross-examination

evidence showing that the dynasty program was inadequate. However, this misinterprets the basis for Judge McDade's concerns regarding the references to the dynasty program. As reflected in the courts July 16, 2002, and May 30, 2003, Orders, Judge McDade was concerned not with the validity of the dynasty methodology itself, but rather with the lack of testimony or evidence in the record regarding what the "dynasty model" testing methodology was, as well as the relevance of the methodology to the facts in issue in this case. Thus, the concern was that the jury would not have sufficient information to understand the content of DX 410, not a Daubert-like dilemma regarding the scientific basis for the evidence, and the Sturmans have failed to demonstrate that Judge McDade committed clear error in concluding that the lack of sufficient background information regarding this methodology would needlessly confuse the jury.

Finally, the Sturmans contend that DX410 shows that Caterpillar's position in this case that it's employees made an important contribution to spool valve technology resulting in a protectible trade secret is scientifically baseless. This argument was effectively refuted by Judge McDade in the July 16, 2002, and May 30, 2003, Orders, where he found that the probative value of the document (and particularly the portion offered by the Sturmans) was substantially outweighed by the danger of unfair prejudice, as it takes a sentence from the document and presents it out of context in a way that is fundamentally misleading. Specifically, Judge McDade noted that statements appearing later in the exhibit indicated that the statement offered by the Sturmans referred to a comparison between the '329 patent and another type of technology not at issue in this case. He then concluded that the Sturmans had not laid any foundation that would have supported the conclusion that the

statement in DX 410 applied to the efficacy of SAE 52100 and SAE 4140 in the '329 patent, as they had declined to call Touvelle, the author of the document, as a witness at trial.

Touvelle subsequently confirmed the validity of the court's interpretation of DX 410 in a deposition in another case. Specifically, Touvelle stated that in DX 410, he was "comparing using a dual solenoid with latching solenoids versus a dual solenoid with a spring system . . . . the objective as stated in the document is to compare the two systems, the dual latching valve system versus a dual solenoid system with a spring." July 12, 2005, Touvelle Dep. Tr. at 8-11. The Sturmans now respond that even assuming that Caterpillar's interpretation of the identified language of the exhibit was correct, other technical observations and results set forth in DX 410 would still be relevant at trial. Yet this argument ignores and makes no attempt to cure the underlying lack of foundation for the exhibit that doomed its admissibility in the first trial.

Thus, the Court must reject the Sturmans' contention that the court's prior rulings were not well-founded, without any basis, or clearly erroneous and conclude that there has been no showing warranting reconsideration of the law of the case. Their Motion in Limine No. 1 requesting to enter a pretrial ruling to the effect that the document is admissible for all purposes is therefore denied. However, to the extent that a proper foundation is laid at trial, which may only be possible by calling Touvelle to provide the jury with a proper basis for understanding the exhibit, the Court would be willing to revisit the Sturmans' request to introduce DX 410.

II.    Sturmans' Motion in Limine No. 2

In this Motion, the Sturmans move for the admissibility of DX 389, the '777 patent, based on the assertion that the issuance of this patent on August 23, 1994, constituted a

public disclosure by Caterpillar of its alleged trade secret. During the first trial, the court found that another Caterpillar patent, the '901 patent, disclosed Caterpillar's alleged trade secret, and that any trade secret misappropriation recovery would necessarily be cut off as of January 2, 1996, the date that the '901 patent issued. The Sturmans argue that the '777 patent makes exactly the same disclosure as the '901 patent, thereby placing the alleged trade secret in the public domain as of August 23, 1994. Caterpillar responds that the court's prior ruling that the '777 patent did not in fact disclose Caterpillar's alleged trade secret and could not be admitted to support such an argument was correct.

This issue has also been addressed previously and is governed by the law of the case. On July 16, 2002, the court issued an Order limiting the admissibility of the '777 patent. The court noted that testimony by Mr. Sturman at trial had established that the '987 patent disclosed the use of the integrated spool valve technology in a fuel injector, but that no such testimony had been given in connection with the '777 patent and that the evidence did not compel the same conclusion.

> The patent states that "it may become apparent to those skilled in the art that the present invention may be used in a variety of engine applications such as the control of a needle valve for a fuel injector." No one has testified that it was apparent to Caterpillar or to anyone else that the valve disclosed in the '777 patent could be used in a fuel injector. In isolation the statement appears to be more of a suggestion for innovation or experimentation. Accordingly, without a foundation that Caterpillar knew or believed the invention disclosed in the '777 patent would work in fuel injector applications, without substantially changing the disclosed invention, the relevance of the disclosure in the '777 patent is limited to what the Court has already allowed, that being "as an admission by Caterpillar that in 1993 soft magnetic material could be used in making the core, armature and valve body to achieve residual magnetic latching in a non-fuel injector valve."

With all due respect, this is effectively another motion to reconsider the law of the case. The Sturmans repeatedly cite Champaign-Urbana News Ag., Inc. v. J.L. Cummins News Co., 632 F.2d 680, 683 (7th Cir. 1980), for the proposition that "[t]he only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." In doing so, they ignore the key prerequisite that the trial court must be "**convinced**" that the law of the case is clearly erroneous. It is obvious that the Sturmans disagree with the court's interpretation of this evidence and have interpreted the law of the case doctrine as something that is subject to change on a whim, but the Court has repeatedly rejected this position in ruling on the pleadings in this case and held that the law of the case will not be overturned absent a showing of new controlling law or clear error. Mendenhall v. Mueller Streamline Co., ___ F.3d ___, 2005 WL 1994114, at *4 (7th Cir. Aug. 19, 2005). As the Sturmans' have not introduced new controlling law, and their arguments are largely rehashing arguments that were previously rejected by Judge McDade and which do not demonstrate clear error, the Court must conclude that they have failed to demonstrate that a change in the prior ruling is warranted.[1] Accordingly, their Motion in Limine No. 2 will be denied. However, as with the previous ruling, to the extent that the evidence presented at trial cures the deficiencies identified by Judge McDade in his prior ruling, the Court would be willing to revisit the Sturmans' request for the unlimited admissibility of DX 389.

---

[1] In light of this ruling, there is no need to consider the Sturmans' additional request to cut off Caterpillar's trade secret misappropriation damages as of the date of issuance of DX 389.

III.        Sturmans' Motion in Limine No. 3

In Motion in Limine No. 3, the Sturmans ask the Court to preclude all evidence, argument, and elicitation of testimony about the prior jury trial or its outcome. Caterpillar agrees that neither side should be permitted to argue or elicit testimony regarding the fact that there was a prior jury trial or the outcome of the trial. The parties further agree that it is permissible to refer to the sworn testimony of witnesses from the prior trial and to elicit testimony from the prior trial that does not address either the outcome or the fact that there was a prior trial. Any testimony from the prior trial will be referred to only as "prior testimony under oath" or "prior sworn testimony." Accordingly, the Sturmans' Motion in Limine No. 3 is effectively moot by agreement.

IV.        Sturmans' Motion in Limine No. 4

The Sturmans next seek to preclude Caterpillar from presenting any evidence pertaining to exemplary damages in light of Judge McDade's ruling that Caterpillar cannot recover exemplary damages because a claim for such damages was not disclosed during discovery. As a result, evidence admitted at the first trial concerning the Sturmans' income, net worth, and assets is irrelevant and unfairly prejudicial.

Caterpillar responds that it is entitled to seek exemplary damages as the Illinois Trade Secret Act specifically provides for an award of exemplary damages when the misappropriation is willful and malicious. Caterpillar then states that its claim for exemplary damages was submitted to the jury, and it was allowed to introduce evidence relating to the Sturmans' finances to support that claim. Caterpillar also argues that there is no good reason to preclude it from seeking exemplary damages in the retrial because even though

it did not disclose exemplary damages in discovery, there was a claim for exemplary damages set forth in its Complaint.

Caterpillar's argument was presented and rejected in the prior proceedings, and it would now appear that it is Caterpillar that is conveniently ignoring or mischaracterizing the law of the case. A review of the transcript of the February 7, 2002, hearing during which Judge McDade issued his ruling, reveals that Caterpillar was clearly and unambiguously precluded from recovering exemplary damages as a result of their failure to disclose this to the Defendants during discovery. Caterpillar then made a request to submit the issue of willfulness to the jury on an advisory basis for purposes of preserving the issue for appeal. (2/7/02 Transcript at 24). The court ultimately granted this request and allowed the question of willfulness to be submitted to the jury for an advisory opinion in the event that the decision to preclude Caterpillar from requesting exemplary damages was subsequently reversed on appeal. (2/7/02 Transcript at 27). The court's ruling barring a claim for exemplary damages was not appealed by Caterpillar, which would pose a bar to the present attempt to obtain exemplary damages in and of itself. See Barrow v. Falck, 11 F.3d 729, 730 (7th Cir. 1993); *see also,* Tronzo v. Biomet, Inc., 236 F.3d 1342, 1347-48 (Fed. Cir. 2001).

Caterpillar has not demonstrated any compelling reason why the Court should revisit Judge McDade's ruling precluding it from obtaining exemplary damages in this trial or otherwise demonstrated that the ruling barring Caterpillar from presenting its claim as a discovery violation was clearly erroneous. Moreover, this Court does not present barred claims to the jury to obtain advisory rulings on issues that have been held to be precluded, especially when such procedure places evidence in the record which the jury would not

otherwise have considered. As a result, on retrial, the question of willfulness in the context of exemplary damages will not be presented to the jury, even on an advisory basis, and Caterpillar will not be allowed to present evidence of the Sturmans' finances in support of that claim.

Caterpillar argues that such evidence is also relevant to issues other than its claim for exemplary damages. First, Caterpillar notes that evidence of the Sturmans' finances would also be relevant to the Sturmans' own misappropriation claim. However, as the Court has granted summary judgment in favor of Caterpillar on that claim, the Sturmans' misappropriation claim will not provide a vehicle for Caterpillar to introduce such evidence. The same is true of Caterpillar's arguments that evidence of the Sturmans' finances is relevant to its defense that the Sturmans suffered no "actual loss" as a result of the alleged misappropriation and to rebut the claim of the Sturmans' expert witness on damages. Accordingly, Caterpillar has failed to demonstrate any other use of this information that would be permissible in the retrial, and the Sturmans' Motion in Limine No. 4 is granted.

V.    <u>Sturmans' Motion in Limine No. 5</u>

The Sturmans argue that Caterpillar should be barred from making statements to the prospective jurors during voir dire reminding them of Caterpillar's "influence" in the community, prominence in the community, contributions to the community, as well as comments to the effect that the jurors relatives and friends liked working at Caterpillar or had good job experiences at Caterpillar. Caterpillar responds that its comments were not improper, but rather were appropriate follow-up to points that were raised by Judge McDade.

The jury selection practice in this Court is somewhat different from the procedures used in the prior trial. With one limited exception, attorneys are not permitted to ask questions directly of the prospective jurors. Proposed voir dire questions are submitted in writing prior to the trial, and the questions that are approved are asked by the Court in an appropriate and balanced fashion that does not favor one party over the other. To the extent that a party believes that a follow-up question is necessary, the Court will consider such questions at a side bar, and, if approved, any follow-up questioning will be conducted by the Court. The only time that counsel will be permitted to question jurors directly will be in the event that a juror has been called to the side bar for any follow-up questioning where the Court does not want the jury panel to hear the response or where the answer could be embarrassing for the juror. In that case, the Court will call the juror to the side bar; after the Court finishes its questions, the attorneys may then ask brief follow-up questions limited to the topic that brought the juror to the side bar. Given this Court's practice for conducting voir dire, the type of questioning objected to in the Sturmans' Motion in Limine No. 5 will not occur, and the Court therefore finds the Motion to be denied as moot.

VI.    Sturmans' Motion in Limine No. 6

The Sturmans ask the Court to take judicial notice of the fact that Mr. Sturman has been held to be the sole inventor of the '329 and '987 patents. In the prior bench trial, Judge McDade held that Mr. Sturman was the sole inventor of these patents, and these findings were affirmed by the Federal Circuit on appeal.

Caterpillar responds that the Court should not take judicial notice of a fact that is not relevant to any of the issues to be tried by the jury. Specifically, Caterpillar argues that the inventorship of the '329 and '987 patents is not part of the present case and has never

been an issue for the jury in any event. Accordingly, taking judicial notice of such issues would likely lead to unnecessary confusion by the jury, as issues of inventorship are irrelevant to Caterpillar's claims of ownership. Questions of ownership are dependent upon the terms of the JDA and whether the Sturmans breached the requirements of the JDA. Thus, the question for the jury is whether the technology at issue was made or conceived pursuant to the JDA program or based upon Caterpillar's proprietary information. Similarly, on the trade secret issue, Caterpillar maintains that details of patent inventorship are inapposite because trade secret protection is not in any way dependent on patentability.

The Sturmans respond that Mr. Sturman's inventorship of the '329 and '987 patents is highly relevant to Caterpillar's trade secret misappropriation claim, as it undercuts Caterpillar's contention that Caterpillar engineers conceived of the subject matter of the two patents. When evaluating whether Caterpillar's alleged trade secret was misappropriated by Mr. Sturman in these patents, the Sturmans argue that the jury is entitled to know that he alone invented these devices independent of Caterpillar's engineers.

Although this is an extremely close call, the Court concludes that the Sturmans have the better argument. While the relevance and weight of these facts is subject to debate and is certainly not dispositive of Caterpillar's trade secret misappropriation claim, the Court finds that the Sturmans are entitled to have the jury informed that Mr. Sturman is the sole inventor of the '329 and '987 patents at an appropriate time. This announcement will then be followed by a proper cautionary instruction reminding the jury that the issue for them to consider is whether the intellectual property at issue was made or conceived pursuant to the JDA program, regardless of who actually made or conceived it, in order to avoid unnecessary confusion. The Sturmans' Motion in Limine No. 6 is therefore granted.

VII.    Sturmans' Motion in Limine No. 7

The Sturmans request the Court to construe terms and provisions of the JDA as a matter of law, citing United States v. 4500 Audek Model Number 5601 AM/FM Clock Radios, 220 F.3d 539, 543 n.6 (7th Cir. 2000), for the proposition that if a contract is "in writing, is unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court."  Specifically, the Sturmans ask the Court to construe the following phrases from the JDA: (1)  "pursuant to the PROGRAM" from ¶ 6 of the JDA should be construed to mean "in conformity with the applicable PROGRAM PHASE described in the attached Exhibit D" and should not be construed to mean "during the PROGRAM," "related to the PROGRAM," or "pursuant to the AGREEMENT"; (2) the duty to assign that which is "made or conceived by ANESCO" from ¶6 of the JDA should not be construed to encompass a duty to assign "future improvements on that made or conceived by ANESCO"; (3) ¶ 5.1 of the JDA should be construed consisted with the sole purpose of providing notice of the need to comply with the "safeguard" and "use" provisions for "the other party's PROPRIETARY INFORMATION"; (4) ¶¶ 5.2, 5.3, and 5.4 of the JDA should be construed to permit only the "disclosing party" to sue for breach; and (5) ¶ 7.1 of the JDA should be construed as a license grant from Caterpillar to ANESCO.

Caterpillar responds that this Motion seeks proposed constructions that are contrary to the prior rulings on the meaning and scope of the JDA.  During the first trial, the jury was instructed on the contract language without the aid of extrinsic evidence or interpretative construction, and the Sturmans did not object to this procedure at trial.  Caterpillar cites Federation of Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 929 (7th Cir. 2003), for the proposition that the Sturmans' failure to object results in a waiver of the

ability to challenge the previously given instructions. Additionally, the court rejected post-trial attempts by the Sturmans to limit the scope of the term "PROGRAM" in its May 29, 2003, Order denying the Sturmans' Renewed Motion for Judgment as a Matter of Law at pages 9 - 14. Neither of these rulings was presented on appeal to the Federal Circuit.

At trial, the court also rejected the Sturmans' proposed construction of ¶ 5 of the JDA as referring only to the party disclosing the proprietary information. The court held, "If [technology is] made pursuant to the program and marked confidential, then pursuant to 6.1 it becomes property that is [assigned] to Caterpillar. It doesn't matter who marked it confidential." Trial Transcript at 1137. This finding was reaffirmed in the court's July 12, 2002, Order at pages 16 - 17, where the court noted that it had "previously ruled that the identity of the person marking the information is irrelevant where the information is developed pursuant to the PROGRAM."

The jury was likewise instructed with respect to ¶ 7.1 of the JDA. After setting forth the terms of ¶ 7.1, the court gave the following instruction:

> If you find the Sturmans breached the JDA by licensing intellectual property when they had no right to do so, then you should find for Caterpillar on that breach of contract claim. If not, you should find for the Sturmans on that breach of contract claim.

This instruction was neither objected to nor appealed. The Sturmans' present argument that ANESCO is incapable of breaching the license as a matter of law is contrary to the law of the case in the form of the instruction previously given and was effectively waived by the failure to object at trial or raise the objection on appeal.

Like the situation with the Sturmans' attempts to relitigate the scope of their release, this Motion seeks to reargue the law of the case, avoid the implications of their waiver, and

effectively do an end run around the prior findings with respect to the scope of the JDA and its provisions. Thus, the Court concludes that the relief requested by the Sturmans in Motion in Limine No. 7 is improper, and the Motion is therefore denied.

VIII.   Sturmans' Motion in Limine No. 8

In Motion in Limine No. 8, the Sturmans seek to exclude the unqualified testimony of Dr. Jiles, Caterpillar's expert in the field of magnetism and magnetic material sciences. They argue that certain statements in a recently filed Declaration submitted in opposition to the Sturmans' Motion for Summary Judgment indicate an intent by Caterpillar to introduce testimony from Dr. Jiles beyond the scope of what was allowed in the first trial. Caterpillar responds that it does not intend to introduce testimony from Dr. Jiles as to what an actuator designer would know or what a person designing a fuel injector would know or do, but that the Sturmans are erroneously attempting to preclude Dr. Jiles from even uttering the words "actuator," "latching," or "fuel injector."

With all due respect, the scope of Dr. Jiles' testimony has been determined previously in this litigation, and the Court has not been presented with any reason why the law of the case should be revisited in this respect. In considering this issue, Judge McDade held:

> THE COURT: Dr. Jiles can explain what Caterpillar's claimed contribution is and how it was applied to the patented device. The fact that Jiles did not consider certain information, particularly information pertaining to Sturmans' claims, I think goes to weight and not to the admissibility of his opinion about what Cat's claimed contribution is. However, he cannot testify as to what Sturman knew or did not know with respect to the use of residual magnetic material as a latching mechanism. And he cannot opine about the ordinary skill in the art.
>
> . . .

15

MR. STEADMAN: When you say he cannot opine about the ordinary skill in the art, I take it that means he cannot say what a magnetic circuit designer would understand from a particular piece of art. Is that correct?

THE COURT: Yes.

. . .

MR. STEADMAN: The problem is that Dr. Jiles does not have the background in fuel injectors, actuators or magnetic circuit design in order to opine about what one of ordinary skill in those arts would know. But the test is whether — for whether something is a trade secret, is whether it is known or easily obtainable to a person of ordinary skill in that art without substantial research. They have chosen an expert in how a — how a material works and how the particular materials differ from one another, instead of choosing an expert who has expertise in the specific area that the — that the trade secret is directed to. And so when they seek to have this person opine that someone of ordinary skill in magnetic circuit design would not be able to tell from the prior art the supposed trade secret that Caterpillar has, they are asking him to go beyond any possible basis in his expertise.

THE COURT: Well, I'm inclined to agree with you, because the thought keeps occurring to me that it would be helpful if an expert said what is it about residual magnetic materials that give it the power to — to do something. Such as activate a switch. Or this or that. Well, here's what it is, and he explains that.

MR. FREED: He could do that.

THE COURT: It seems to me that's within his expertise. It seems to me it's not within his expertise for him to then say in order for a designer of fuel injectors to — to know what materials will or will not work, he has to have more information than what's in this patent. It seems to me that if the jury can make that — can make that determination, if they hear what it is that you need and they see that this patent does not provide everything that Dr. Jiles says you need, then arguably the patent wasn't helpful.

MR. FREED: Your Honor, once again, what's happening here is there's a focus on one sentence and not on the paragraph. The next sentence of that same paragraph says — and I'm reading from page 5 of his opinion — it says the reference to soft magnetic materials in the '898 patent is simply too vague to be useful to such and such a designer.

That's his area of expertise. He's going to be able to say I'm an expert in magnetic materials, and what that says about soft magnetic materials just isn't enough to be useful to that designer no matter what. He couldn't — you know, he couldn't tell you anything from that. And then he's going to want to be able to go on to say, in addition, I've seen the joint development work, and that shows that if you have materials with less than 20 oersteds — which is a magnetic property, a property that he's an expert in — they are likely to be inappropriate for fuel injectors because I've seen indications of that. Those are the things they want — that he needs to be able to say.

Now, again, maybe the first sentence is inartfully drafted, but that first sentence being inartfully drafter shouldn't prevent the rest of that testimony.

THE COURT: I understand.

. . .

THE COURT: Okay. I guess where you lose me is that I think that his discussion of the properties of magnetic materials and their ability to do something to be used as switches is fine and helpful. Btu it seems to me when he goes further and says — and specifically with reference to fuel injectors and how you make them, I don't think he's qualified to say that.

MR. FREED: And that's the point, Your Honor. It doesn't have to be fuel injectors. He could say with respect to anything you wouldn't know enough if this would work. But he could say this: I've seen data that indicates that if coercivities are less than 20, it won't work in a fuel injector. He can say that. He can say I've seen that data.

. . .

MR. STEADMAN: I think if we bring it back to the central question, which is whether Dr. Jiles can opine as to what one of ordinary skill in magnetic circuit design would know, that question is easily answered.

THE COURT: I don't think he can say that.

MR. STEADMAN: He can't say that. He can't look at the '898 —

THE COURT: I'm agreeing with you.

MR. STEADMAN: — what one of skill in the art —

THE COURT: I agree with you. I don't think he can say that. Mr. Freed, I don't think he can say that. He's not a designer.

MR. FREED: I think that means that sentence is inartfully drafted.

THE COURT: I think what he's been talking to me about is something other than that, which I agree he can't say that. I think he admits now he can't say that.

MR. FREED: He's not going to say that. He's not going to say that.

THE COURT: He's not going to ask him that.

MR. STEADMAN: Then I guess we agree that we ought to enter the requested motion in limine and he won't say that, because Mr. Freed doesn't intend to ask him those questions.

MR. FREED: Well, Your Honor, the motion goes much broader than that.

THE COURT: Yeah. I wouldn't — I wouldn't do that, but I would say that the Court would acknowledge for the record that Caterpillar does not intend to ask Dr. Jiles what a knowledgeable, informed designer of fuel injectors —

MR. STEADMAN: Magnetic circuits.

> THE COURT: — magnetic circuits would — would — would derive from the patent. Is that — what's the question you want me to —
>
> MR. FREED: I think you captured it, Your Honor.
>
> THE COURT: Is that it?
>
> MR. STEADMAN: If Mr. Freed agrees with that, then we have no further issue on that particular point.
>
> THE COURT: Okay.
>
> MR. FREED: But I do —. If we're asking for clarifications in orders, I do intend to ask this man to give testimony on the application of magnetic principles to actuators and fuel injectors, because that's where he's an expert. Not on the fuel injectors, but the application of the magnetic and material science principles.
>
> THE COURT: It seems to me he's expert to be able to tell the jury the capabilities of magnetic materials —
>
> MR. FREED: That's right.
>
> THE COURT: — and what it is and what is needed for them to work —
>
> MR. STEADMAN: I think as Mr. Streff —
>
> THE COURT: — to do something.
>
> MR. STEADMAN: I think we understand, as Your Honor has and I think as Mr. Streff previewed, it is likely to come back to visit some specific questions, but Your Honor's guidance at this point is very helpful.

Transcript of February 7, 2002, Hearing at 97 - 116.

This is the law of the case, and this latest attempt to revisit the issue to obtain a broader preclusive ruling than what was found to be appropriate by Judge McDade without in any way demonstrating that the ruling was erroneous is unavailing. The scope of Dr.

Jiles' testimony will remain what it was during the prior trial. As a result, Dr. Jiles will not be allowed to testify as an expert about how a fuel injector is made, what a fuel injector/magnetic circuit designer would or would not know, or what one of ordinary skill in magnetic circuit design would know. The Sturmans' Motion in Limine No. 8 effectively seeks to preclude Dr. Jiles from mentioning the words actuator or fuel injector even in the most general sense and is therefore denied.

## CONCLUSION

For the reasons set forth above, the Sturmans' Motions in Limine No. 1-6 [#487] are GRANTED IN PART, DENIED IN PART, and MOOT IN PART. The Sturmans' Motion in Limine No. 7 [#506] is DENIED, and their Motion in Limine No. 8 [#514] is DENIED.

ENTERED this 27th day of September, 2005

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge