E-FILED
Wednesday, 22 February, 2006  12:48:59 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| CATERPILLAR INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 99-CV-1201 |
| ) | |
| STURMAN INDUSTRIES, INC., ODED E. ) | |
| STURMAN and CAROL K. STURMAN, ) | Judge Michael M. Mihm |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is now before the Court on Caterpillar's Motion for Specific Performance of Paragraph 6.1 of the JDA and a Declaration of Ownership of the '329 and '987 Patents. Specifically, Caterpillar seeks an Order: (1) directing the Sturmans to specifically perform the assignment provisions of the JDA; (2) declaring that Caterpillar is the rightful owner of the entire right, title, and interest in United States Patent Nos. 5,406,329 and 5,640,987 and the applications from which they are derived; and (3) enjoining the Sturmans from taking any action that is designed to undermine Caterpillar's ownership rights in the patents and patent applications. This Order follows.

**DISCUSSION**

I.  Specific Performance and Declaration

Although the normal remedy for breach of contract is an award of damages, specific performance is an equitable remedy that comes into play when damages are an inadequate remedy. Miller v. LaSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996); Schwinder v. Austin Bank of Chicago, 348 Ill.App.3d 461, 809 N.E.2d 180, 195 (1st Dist. 2004). "Specific performance is a matter of sound judicial discretion controlled by established principles of

equity and exercised upon a consideration of all the facts and circumstances of a particular case." Id. at 196, *citing* Omni Partners v. Down, 246 Ill.App.3d 57, 614 N.E.2d 1342, 1345 (2nd Dist. 1993). The court must balance the equities between the parties and may decline to grant specific performance where the remedy would cause a peculiar hardship or inequitable result. Id.

In order to be entitled to specific performance, a plaintiff must prove: (1) the existence of a valid, binding, and enforceable contract; (2) that plaintiff has complied with the terms of the contract or is ready, willing, and able to perform it's part of the contract; and (3) defendant has failed to perform or refused to perform its part of the contract. Dixon v. City of Monticello, 223 IllApp.3d 549, 585 N.E.2d 609, 618 (4th Dist. 1991). Here, the parties agreed and stipulated that the JDA was a valid, binding and enforceable contract. The jury, after having been instructed that Caterpillar must prove that it performed all material obligations required of it under the JDA, entered a verdict in favor of Caterpillar on each of its breach of contract claims, including ¶ 6.1, which provided:

> With respect to INTELLECTUAL PROPERTY made or conceived by ANESCO personnel, either alone or with others (a) pursuant to the PROGRAM or (b) resulting from or based on CATERPILLAR'S PROPRIETARY INFORMATION, ANESCO agrees to: . . . (b) assign (and ANESCO hereby assigns) to CATERPILLAR all rights to such INTELLECTUAL PROPERTY, to Applications for Letters Patent, and to Letters Patent granted upon such INTELLECTUAL PROPERTY; and (c) acknowledge and deliver to CATERPILLAR (without charge to CATERPILLAR but at the expense of CATERPILLAR) such written instruments and to do such other acts as may be necessary in the opinion of CATERPILLAR to obtain and maintain Letters Patent and to vest the entire right and title in same and in the WORKS in CATERPILLAR.

The jury was instructed that it must determine whether the '329 and '987 patents were "granted upon INTELLECTUAL PROPERTY that was made or conceived pursuant to the

2

PROGRAM or resulting from or was based on CATERPILLAR'S PROPRIETARY INFORMATION." If the jury found that the Sturmans had failed to assign patents that met this criteria, then the jury was instructed to find in favor of Caterpillar on that breach of contract claim. Ultimately, the jury found that the Sturmans had breached ¶ 6.1 of the JDA.

The Sturmans first argue that Caterpillar has not proven its entitlement to specific performance by "clear, explicit, and convincing evidence," as the jury's verdict was governed by a preponderance of the evidence standard, suggesting that the basis for the jury's verdict that the Sturmans had breached ¶ 6.1 was somehow unclear. However, the cases cited by the Sturmans are readily distinguishable. None of the cases cited address the procedural situation present in this case, namely a situation in which specific performance is a remedy flowing from a breach of contract that has been specifically determined by a jury based on a clear and unambiguous contract. Medcom Holding Co. v. Baxter Travenol Labs., Inc., 984 F.2d 223, 229-30 (7th Cir. 1993). Where a case presents mixed questions of law and equity, and a jury has made a specific finding that the defendant has breached the contract, a district court is fee to award the equitable remedy of specific performance. Id.

Moreover, with all due respect, the Court does not see any ambiguity with respect to this portion of the verdict. The language of the assignment provision contained in ¶ 6.1 of the JDA is clear and unambiguous, and the jury was clearly informed that the claimed breach arose out of the failure to assign the '329 and '987 patents. It is also undisputed that the Sturmans did not assign the '329 or '987 patents to Caterpillar. While the Sturmans provided a variety of justifications for their not having done so, they cannot reasonably dispute that under the plain language of ¶ 6.1, their failure to assign these patents to Caterpillar would constitute a breach of ¶ 6.1 if these patents were made or conceived

3

pursuant to the PROGRAM or resulted from or were based on CATERPILLAR'S PROPRIETARY INFORMATION. The jury rejected the Sturmans' proposed justifications and equitable estoppel defense, finding that the "30-word mantra" embodied within the '329 and '987 patents was first made or conceived pursuant to the JDA program and that the Sturmans had breached ¶ 6.1 of the JDA by failing to assign these patents.

The Court finds that the assignment provision of the JDA is sufficiently clear and unambiguous to support the enforcement of the equitable remedy of specific performance. Based on the evidence presented at trial and the jury's verdict, the Court further finds that Caterpillar met its burden of demonstrating that the '329 and '987 patents embodied intellectual property made or conceived pursuant to the JDA program or resulted from or were based on Caterpillar's proprietary information and that the Sturmans breached ¶ 6.1 of the JDA by failing to assign the '329 and '987 patents.

Having concluded that specific performance could be an appropriate remedy, the Court must next analyze the particular facts and circumstances of this case to determine if ordering the Sturmans to assign the patents would cause a peculiar hardship or inequitable result. The Sturmans repeat their now familiar argument that there should be no assignment because both the '329 and '987 patents contain features that are in no way related to the Jumers drawing or the "30-word mantra." As such, they contend that it would be inequitable to give Caterpillar ownership of patents that contain inventive concepts that had nothing to do with the JDA program. At best, they assert that Caterpillar should be made a co-owner with the Sturmans.

However, this argument was effectively presented to and rejected by the jury in an attempt to establish that neither the '329 nor '987 patents were covered by the JDA program.

4

Furthermore, a co-ownership remedy is unsupported by any reasonable construction of the assignment provision of the JDA. Where the assignment provision is triggered, the language of the JDA clearly requires the assignment of "all rights" and requires the execution of all written instruments necessary to "vest the entire right and title in same" to Caterpillar. Contrary to the interpretation favored by the Sturmans, there is no indication that Caterpillar is entitled to partial rights to such patents only to the extent that they were granted upon intellectual property belonging to Caterpillar. It is the obligation of the Court to enforce the contract that the parties entered into, not to add additional terms to a contract in order to achieve a more compassionate result that was not bargained for at the time that the contract was made. Thus, the Court must reject the request for co-ownership of the '329 and '987 patents.

The Sturmans next maintain that the equities preclude the assignment of the patents and seek an equitable relief hearing to introduce additional evidence. They contend that Caterpillar has no need for the patents, has delayed too long in seeking them, and acted inequitably by misleading them as to what intellectual property or proprietary information was covered by the JDA program; they also urge the Court to reconsider numerous rulings made both prior to and during the retrial in this matter, including the ruling denying the applicable portion of the Sturmans' Motion for JMOL made during the trial. Considerable argument and evidence on these points is already in the record and was effectively rejected by either the jury or the Court. Rearguing the evidence presented at trial and rulings made during the prior proceedings in this litigation is unavailing.

The Sturmans also argue that assignment would be inequitable because Caterpillar was willing to accept, and the Sturmans were willing to assign, a patent application claiming

1:99-cv-01201-MMM    # 664    Page 6 of 9

...

a 2-way integrated spool valve on a MEUI.  While Rule 408 may not prohibit the introduction of evidence relating to settlement negotiations when offered for some purpose other than establishing liability, the Court finds that it would be bad public policy to allow evidence of prior settlement negotiations to be used in the way that the Sturmans are attempting to use it here, that is as a shield to avoid the imposition of a remedy flowing from a breach of contract.  Such a ruling would unnecessarily discourage litigants from attempting to reach a compromise of disputes if doing so would result in the inability to assert its full rights in the event that settlement negotiations fail and liability is established in its favor as a result of the adversarial trial process.

It is further suggested that Caterpillar should not be awarded the '329 and '987 patents because "Caterpillar will likely take the position that it also gains rights to more patents than just the '329 and '987 patents — perhaps even to each of the later patents that has some common ancestry with the '329 and '987 patent applications."  Regardless of whether this prediction is accurate or inaccurate, it is mere speculation involving facts and arguments not properly before the Court in the context of this litigation.  In this case, Caterpillar's asserted right to the patents and applications for letters patent granted upon intellectual property made or conceived pursuant to the JDA program or resulting from or based on Caterpillar's intellectual property was clearly addressed only to the '329 and '987 patents and the applications from which those two patents were derived.  Any question as to whether or not Caterpillar would be entitled to the rights in additional patents based on these patent applications cannot properly be resolved here but must await resolution in another case in the event that Caterpillar attempts to obtain additional patents.

The final area that the Sturmans urge the Court to consider in weighing the equities is that the assignment will cause both the Sturmans and their customers to suffer undue hardship, while resulting in no benefit to Caterpillar. In this limited respect, the Court finds that the trial did not afford the Sturmans a full and fair opportunity to present relevant evidence in support of their position. The Court will schedule a conference call in the near future to ascertain with more specificity what evidence the Sturmans wish to offer on this issue and will then make the determination as to what evidence on this issue (evidence which is not duplicative of evidence that is already in the record) would be appropriately considered at a brief evidentiary hearing.

II.     Request for Injunctive Relief

The now vacated February 11, 2003, Order Directing Specific Performance and Declaratory Judgment required the Sturmans to perform the JDA by executing the attached assignments "and by ceasing to purport to own any right, title, and/or interest in or to the patents or patent applications described in the attached assignments." In addition to this language, Caterpillar now asks the Court to effectively enjoin the Sturmans from pursuing an arbitration proceeding that is currently pending. Specifically, Caterpillar seeks a clause to the effect that:

> The Sturmans are not to assert, and are hereby enjoined from asserting, any claim of right, title or interest, or benefit from or in United States Patent Nos. 5,460,329 and 5,640,987, and the patent applications from which they are derived based on any provision of the JOINT DEVELOPMENT AGREEMENT, whether through litigation, arbitration or any other means with the exception of exercising their right to appeal of the Final Judgment in this action to an appropriate Circuit Court of Appeals and the United States Supreme Court.

7

Although Caterpillar makes various arguments why the arbitration should not be allowed to proceed, such as waiver, res judicata, and the application of the November 30, 1993, release, the question of whether the Sturmans can arbitrate a dispute arising out of a reassignment provision of ¶ 15.7 of the JDA (particularly when there has not yet been any assignment ordered) is not part of this litigation and is not properly before the Court. The Court further finds the Sturmans' argument that their claim under ¶ 15.7 does not ripen until the patents in question have been assigned to Caterpillar to be persuasive. This necessarily implies that the arbitration cannot undermine this Court's judgment because the question of whether there should be a reassignment is a completely separate issue from whether there should have been an assignment in the first place, which is the question now before this Court. As a result, the requested injunction is not necessary in order for the Court to protect its judgment. Such arguments must properly be addressed to the arbitration panel, which is the appropriate venue to resolve the question of whether the pending arbitration can properly proceed.

## CONCLUSION

For the reasons set forth above, Caterpillar's Motion for Specific Performance of Paragraph 6.1 of the JDA and a Declaration of Ownership of the '329 and '987 Patents [#639] is DENIED IN PART and RESERVED IN PART. The Motion is denied with respect to the request for injunctive relief precluding the pending arbitration and reserved in all other

respects. The Court will contact the parties in the near future to schedule a conference call to discuss the one issue remaining with respect to the Sturmans' argument in equity.

ENTERED this 22nd day of February, 2006.

                                            s/ Michael M. Mihm
                                            Michael M. Mihm
                                            United States District Judge